STATE ex rel. CLUFF, Atty. Gen. v. WEBER COUNTY IRR. DIST. et al.

No. 3880.  Decided September 13, 1923.  (218 Pac. 732.)

1.  WATERS AND WATER COURSES—PETITION FOR ORGANIZATION OF IRRIGATION DISTRICT HELD SUFFICIENT. Petition for organization of irrigation district stating that "the proposed means of water supply is the Weber, Ogden, Bear, and Provo rivers, as well as all waters that may be developed, saved, or produced by the draining of land, or by other means within said district," *held* sufficient to give the board of county commissioners jurisdiction of the proceedings for the organization of the district under Sess. Laws 1919, c. 68, requiring the petition to state the "proposed means of water supply."[1]

2.  WATERS AND WATER COURSES—ORGANIZATION OF IRRIGATION DISTRICT NOT INVALIDATED BY INSUFFICIENCY OF WATER SURVEY. The fact that the water survey made by the state engineer in proceedings for organization of irrigation district, under Sess. Laws 1919, c. 68, was imperfect and insufficient in certain particulars, did not affect the jurisdiction of the board of county commissioners or invalidate the organization of the district.

3.  WATERS AND WATER COURSES—ORGANIZATION OF IRRIGATION DISTRICT NOT INVALIDATED BY IRREGULARITIES. Mere irregularities in the organization of irrigation district under Sess. Laws 1919, c. 68, do not affect the validity of the district.

4.  WATERS AND WATER COURSES—ORGANIZATION OF IRRIGATION DISTRICT NOT INVALID UNLESS SUBSTANTIAL PROVISION OF STATUTE HAS BEEN DISREGARDED. The organization of an irrigation district under Sess. Laws 1919, c. 68, will not be held invalid, un-

less it clearly appears that some substantial provision of the statute has been omitted or disregarded.

5. STATUTES—ACT PROVIDING FOR ORGANIZATION OF IRRIGATION DISTRICTS HELD NOT TO CONTAIN MORE THAN ONE SUBJECT NOT CLEARLY EXPRESSED IN TITLE IN VIOLATION OF CONSTITUTION. Sess. Law's 1919, c. 68, entitled "An Act to provide for the organization and government of irrigation districts and to provide for the acquisition or construction of works for the irrigation, drainage, and local improvement of lands embraced within such districts, also to provide for the distribution of water for irrigation purposes and to repeal chapter 5, title 55, Compiled Laws of Utah 1917," *held* not unconstitutional as against contention that it contains more than one subject, and that such subject is not clearly expressed in the title.

6. STATUTES—STATUTE INDIRECTLY AFFECTING PRIOR STATUTES WITHOUT COMPLIANCE WITH CONSTITUTIONAL PROVISION AS TO AMENDMENT OF STATUTES HELD NOT VOID. Sess. Laws, 1919, c. 68, providing for the organization of irrigation districts, *held* not violative of constitutional provision specifying manner of amending previous statutes, even though such chapter 68 indirectly modifies or affects previous statutes relating to the same subject-matter, since such provision of the Constitution has reference only to direct amendments, and not to conflicting provisions of separate and independent acts.[2]

Appeal from District Court, Second District, Weber County; *George S. Barker*, Judge.

Quo warranto by the State of Utah, on the relation of Harvey H. Cluff, Attorney General, against the Weber County Irrigation District and others. Judgment of dismissal, and plaintiff appeals.

AFFIRMED.

*Harvey H. Cluff*, Atty. Gen., and *A. G. Horn*, of Ogden, for appellant.

*George Halverson*, of Los Angeles, Cal., and *Richards & Mitchell*, of Salt Lake City, for respondents.

---

[1] *Surrage* v. *McKay*, 60 Utah, 117, 206 Pac. 722.

[2] *Edler* v. *Edwards*, 34 Utah, 13, 95 Pac. 367; *Eden* v. *Irr. Co.* v. *District Court*, 61 Utah, 103, 211 Pac. 957.

FRICK, J.

This is an action in quo warranto instituted in the name and on behalf of the state of Utah by the Hon. Harvey H. Cluff, Attorney General of the state, against the Weber county irrigation district and the other defendants named in the title.

The purpose of the action is the same as was the purpose of the action entitled *Surrage* v. *McKay,* recently decided by this court, and reported in 60 Utah, 117, 206 Pac. 722. Indeed, the prayer for relief in this action is in the precise terms as was the prayer for relief in *Surrage* v. *McKay,* supra, and the only difference between the two actions is that in this one the state of Utah is plaintiff, while in the other action referred to Surrage and others were plaintiffs. The defendants are the same in both actions.

The relief prayed for is:

"That the defendants, after due hearing had, be perpetually enjoined from exercising any corporate rights, privileges, and franchises, and that this court decree that said defendant was never legally incorporated, and that, after an examination had of all the matters relating to the organization of said district, this court decree that said attempted incorporation was irregular, incorrect, and illegal, and that plaintiff have such other and further relief as may be just in the premises."

Nothing is involved in this action, therefore, except the legality of the organization of the defendant Weber county irrigation district.

The complaint is too voluminous to be inserted here. Among other things therein alleged it is averred that the "Weber county irrigation district is an association of persons comprising practically all of the farmers and owners of farm land in Weber county, Utah, and that they claim to be and are acting as a corporation within this state without being legally incorporated, and that the other defendants are and claim to be the directors and trustees of said district." It is further alleged:

"That on or about October 17, 1919, the governor of the state of Utah filed with the board of county commissioners of Weber county, Utah, a petition to organize the Weber county irrigation district

under and pursuant to said chapter 68 of the Session Laws of 1919, and that said petition contained and complied with all the provisions of said act, except it did not state the proposed means of water supply, and that said petition in that regard simply stated the following: 'The proposed means of water supply is the Weber, Ogden, Bear, and Provo rivers, as well as all waters that may be developed, saved, or produced by the draining of land, or by other means within said district.' "

The pleader then proceeds to state in detail just what was done, and in connection therewith states many things that are wholly irrelevant to the question herein involved. We refrain from incumbering the record with what is stated in that regard. In fairness to the pleader, however, we desire to state that it is contended that the several acts and omissions alleged as aforesaid in the complaint disclose that the board of county commissioners acted without and in excess of jurisdiction, and that the organization of the district was not legal, and that the district therefore is not a legal corporation. The acts and omissions alleged, however, are at most mere irregularities, and in our judgment do not affect the jurisdiction of the Weber county commissioners.

There is no allegation that the corporation is or has been guilty of usurping powers in that it has acted or is acting contrary to and in derogation of the powers conferred upon it by the law, except as such arise out of the alleged fact that the corporation was not properly or legally organized. Of course, where a public corporation usurps powers not conferred by law, the state may interfere with it at any time.

The defendants appeared and demurred separately, generally, and specially to the complaint upon the same grounds stated in the Surrage Case, supra. The district court sustained the demurrers, and the plaintiff electing to stand upon the complaint, the court entered judgment dismissing the action. The plaintiff appeals.

The only errors assigned are that the court erred in sustaining the demurrers and in entering judgment dismissing the action.

The briefs filed by both parties are in substance the same as were the briefs filed in the Surrage Case. It is contended on behalf of the state, among other things, that the petition

filed with the county commissioners of Weber county was insufficient to confer jurisdiction upon said commissioners. As before stated, it is affirmatively alleged in the complaint "that said petition contained and complied with all the provisions of said act (chapter 68), except it did not state the proposed means of water supply, and that said petition in that regard simply stated the following." Then follows the statement we have hereinbefore copied of what the petition contained in that respect. It is not only conceded, therefore, but it is affirmatively alleged, that the petition which was filed by the Governor of the state of Utah, pursuant to the provisions of chapter 68 was in strict compliance with the provisions of said chapter, except in the one particular respecting the "proposed means of water supply." In view, however, that what is said in the petition upon that subject is copied in the complaint in this case, it is an easy matter to determine whether the Governor's petition was so defective in that respect as to deprive the county commissioners of jurisdiction as alleged in the complaint. By referring to the statute it will be observed that all that is required to be stated in that regard in the petition is "that the petition shall state the proposed means of water supply." This no doubt is a very general statement, but in case the proposed water supply is to be taken from a particular lake, stream, or other body of water, why is it not sufficient to merely designate such lake, stream, or body of water by their usual names, if they are known by particular names? It will be observed that the petition named the particular rivers which constituted the proposed means of water supply. If only one known stream had been the proposed means of water supply, why would not the designation of that stream have been full compliance with the statute? We can conceive of no valid reason why it would not, and if that be so, the designation of all the streams constituting the proposed means of water supply must likewise be held to be sufficient. Nor would the fact that it might develop that more water would be taken from one of the streams named than from another, or that it might ultimately be found that it was impractical to make use of the water of one of the streams named, defeat the jurisdiction

of the commission. All that the statute requires is that the proposed means of water supply be stated as a whole and not the specific water that will ultimately be utilized. Indeed, the statute expressly provides that the directors of the irrigation district when organized may, at any time, acquire water by purchase, condemnation, or otherwise, thus clearly indicating that the proposed means stated is not the only water that may be used. We are of opinion, and so hold, that the statement in the Governor's petition was sufficient to confer jurisdiction on the county commissioners of Weber county.

It is next contended that "no water survey as provided was made." It is conceded, however, that the state engineer did make a survey, and that he filed a return thereof with the county commissioners, which was acted upon by them. The gist of the contention in this regard is that the survey was imperfect and insufficient in certain particulars. If it were conceded that the survey and report of the state engineer were imperfect and insufficient in certain particulars, that would not affect the jurisdiction of the commissioners nor invalidate the organization of the irrigation district. This contention, therefore, cannot be sustained. It is also insisted that the publication of the notices required by the statute was insufficient in certain respects. A careful examination of the allegations of the complaint in that regard, however, clearly shows that the contention is not tenable.

In this connection we desire to state that it is not contended that the county commissioners, or anyone else, acted in bad faith, nor that any fraud or concealment was practiced in any way; nor that all of the elections provided for by statute were not duly held; nor is there any allegation that all of those interested in the organization of the district did not vote for such organization as contemplated by the statute. Indeed, the allegations of the complaint refer to irregularities rather than to jurisdictional defects. Mere irregularities, however, cannot affect the validity of the organization of an irrigation district. Irrigation districts, under the statute, are authorized to be organized to better conserve the waters of this state, and to more equitably

distribute them among the water users, and to better protect their rights, as well as to prevent unnecessary strife and litigation among the water claimants. Such districts, therefore, subserve a very useful and utilitarian purpose, and their organization should not be held invalid by the courts, unless it clearly appears that some substantial provision of the statute has been omitted or disregarded. Moreover, in view that the statute expressly provides for the dissolution of irrigation districts by the ''landowners representing a majority of the number of acre feet of water  *  *  *  in any irrigation district,'' the district, if no longer desired, may be easily dissolved. In view, therefore, that the landowners may at any time dissolve the district when its organization is not longer desired, and that in such circumstances all rights may be safeguarded and protected, we are loathe to interfere with the organization in a proceeding of this kind, unless, as before stated, it is clear that the law has not been complied with in some jurisdictional matter. We are of the opinion that the complaint does not clearly show such is the case, and hence hold that the district court did not err in sustaining the demurrers.

It is however, further contended that chapter 68 is unconstitutional, for the reasons that the chapter contains more than one subject, and that the subject of the act is not clearly expressed in the title; also that other sections or acts are amended without the Legislature having complied with the constitutional provisions respecting the amendment of laws.

There is no merit to the contention that chapter 68 contains more than one subject as the term ''subject'' has been repeatedly defined by the courts, including this court; nor in the contention that the subject of the act is not sufficiently expressed in the title. Nor can the contention prevail that various sections of the statutes, including other independent acts, are amended by chapter 68 contrary to the provisions of our Constitution. True it is, that some of the provisions contained in different sections of our statutes or in other independent acts may indirectly be affected by some of the provisions of chapter 68. Said chapter is, however, an entirely independent act, and no attempt is made

therein to amend other sections of the statutes or other independent acts. True, it may be that some of the provisions of chapter 68 may in practice be found to affect or modify other provisions relating to irrigation or water rights. That, however, is not what the Constitution forbids. Later laws are frequently enacted which in some way modify or affect earlier laws relating to the same subject-matter. That 6 such is the effect of later enactments is inevitable, and in no way contravenes the constitutional provision that laws shall be amended only in a particular way. That provision has reference only to direct amendments, and not to conflicting provisions of separate and independent acts. See *Edler* v. *Edwards*, 34 Utah, 13, 95 Pac. 367, and cases there cited. See also *Eden Irr. Co.* v. *District Court*, 61 Utah, 103, 211 Pac. 957. It is not necessary to pass upon the other questions discussed by the defendants.

From what is said it follows that the judgment of the district court should be, and it accordingly is, affirmed; respondents to recover costs on appeal.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.